Daniel C. Girard (SBN 114826)
dcg@girardgibbs.com
Eric H. Gibbs (SBN 178658)
ehg@girardgibbs.com
David M. Berger (SBN 277526)
dmb@girardgibbs.com
Linh G. Vuong (SBN 286837)
lgv@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| FRANCISCO OJEDA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

**SUMMARY OF THE CASE**

1.      On October 1, 2015, Experian and T-Mobile announced that Experian's computer system had been breached, compromising the sensitive personal information of approximately 15 million T-Mobile customers and applicants.  The hackers obtained personal information, including names, addresses, Social Security numbers, birthdates, and identification numbers (e.g., driver's license, passport numbers, military identifications).  Cybercriminals were able to perpetrate a breach of this depth and scope because Experian failed to maintain reasonable and adequate security measures. While Experian is obligated to protect the personal data it stores and despite repeated cyber-attacks against it, Experian failed to implement security measures to prevent the breach.

2.      Plaintiff Francisco Ojeda is a T-Mobile customer who brings this proposed class action lawsuit on behalf of T-Mobile customers and applicants nationwide whose personal information has been compromised as a result of the data breach.  Plaintiff alleges that Experian failed to adequately safeguard T-Mobile customers and applicants' personal information.  Plaintiff seeks injunctive relief requiring Experian to invest in security to comply with regulations designed to prevent these types of breaches, as well as damages, restitution, and other remedies.

**PARTIES**

3.      Plaintiff Francisco Ojeda is a citizen and resident of San Jose, California.

4.      Defendant Experian Information Solutions, Inc. is a corporation organized under the laws of the State of Ohio, with its principal place of business in Costa Mesa, California.  Experian is one of the three major credit bureaus that conduct credit checks on individuals throughout the United States.

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from the Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

6.      This Court has jurisdiction over Experian because it has sufficient minimum contacts in California, is registered to do business in California, maintains its principal place of business in

CLASS ACTION COMPLAINT

California, and intentionally avails itself of California markets by promoting, selling, and marketing its services throughout the state.  Accordingly, it is necessary and proper for this Court to exercise jurisdiction.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because Mr. Ojeda resides in this district and a substantial part of the events giving rise to his claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

8.      Assignment is proper to the San Jose division of this District under Local Rule 3-2(d) because Mr. Ojeda resides in San Jose.

**COMMON FACTUAL ALLEGATIONS**

**Experian and T-Mobile**

9.      Experian plc is a global information services company and the world's largest credit data firm.  Among other lines of business, it helps companies determine the creditworthiness of individual consumers.  Experian plc's U.S. subsidiary, Defendant Experian Information Solutions, Inc., maintains data on more than 200 million U.S. consumers.

10.     T-Mobile is the third-largest wireless carrier in the United States.  It provides wireless voice, messaging, and data services to over 50 million customers.  As a matter of policy, T-Mobile gathers information and runs credit checks on consumers who apply for monthly wireless service or product financing.  T-Mobile contracts with credit bureaus to run these credit checks, and has Experian maintain the applicant data.

**The Data Breach**

11.     On October 1, 2015, Experian and T-Mobile announced that hackers had breached Experian's computer system and accessed personally identifiable information about T-Mobile credit applicants hosted on an Experian server.  According to Experian spokesperson Susan Henson, Experian first discovered the breach on September 15, 2015.  A week later, Experian confirmed that hackers had downloaded the records of approximately 15 million people who applied for T-Mobile between September 1, 2013 and September 16, 2015.

12.     The stolen information includes applicants' Social Security numbers, as well as their names, addresses, birthdates, and identification numbers (e.g., driver's license numbers, passport

CLASS ACTION COMPLAINT

numbers, military identifications).   Additionally, the downloaded records contained information about T-Mobile's assessments of consumers' credit risk levels.   Although Experian has claimed that the personal information was encrypted, according to a statement by T-Mobile CEO John Legere, Experian determined that this encryption may have been compromised.

13.     Experian has not yet notified affected T-Mobile applicants about the data breach. Instead, it plans to mail letters to affected individuals by November 30, 2015.

**Experian's Inadequate Security Practices**

14.     Due to the nature and scope of the information they hold, Experian and the other major credit bureaus are prime targets for hackers.   Unlike credit card and bank account numbers, the information held by the credit bureaus cannot be easily destroyed and can be used to perpetrate identity theft.   According to a December 2014 report by Dell SecureWorks, a dossier of personal information consisting of a name, address, birthdate, Social Security number, and other information typically sells for $25 to $40 each.   In contrast, credit card information alone can sell for as little as a few dollars, depending on market conditions.

15.     Experian is well aware of the dangers of data breaches because in addition to its traditional credit data products, it offers "Experian Data Breach Resolution" services that "help[ ] companies manage the cost of a data breach." *See* http://www.experian.com/data-breach/data-breach-resources.html. Experian calls itself an industry leader in data security and management, and touts its history of "successfully handl[ing] thousands of data breaches," including "some of the highest profile data breaches in recent years." It also recently published a *Data Breach Industry Forecast* with predictions "about how the data breach industry will evolve" and sponsored a September 2014 Ponemon Institute study on data breach preparedness.   Experian even maintains a blog on Data Breach Resolution at http://www.experian.com/blogs/data-breach/.

16.     But despite its supposed leadership in data security, Experian's focus is on mopping up existing breaches and it ignores prevention.   As a result, Experian has suffered a number of security breaches in recent years.   In 2013, Experian announced that one of its customers operated an identity theft service and had purchased Social Security and drivers' license numbers from Experian to resell to identity thieves.   Experian failed to notice for nearly 10 months that its customer had been reselling

CLASS ACTION COMPLAINT

consumers' identities on his website, until the Secret Service notified it about the problem.  Although Experian has not announced the full scope of the breached information, the Internal Revenue Service has reported that over 13,000 U.S. citizens suffered over $65 million in fraudulent income tax returns as a result.

17.    On December 30, 2013, T-Mobile informed the California Attorney General and its customers that an unauthorized party had accessed T-Mobile customer information on servers owned and managed by one of Experian's subsidiaries.  The files contained personal information such as names, addresses, Social Security numbers, and driver's license numbers of T-Mobile customers.  T-Mobile discovered the breach in late November 2013 and claimed that Experian had taken "immediate measures" to secure the impacted servers.

18.    After the 2015 data breach was announced, former Experian employees began to report that the company has increasingly given little attention to the strength of its security systems.  Jasun Tate, a former chief information security office delegate and risk consultantb reported leaving the company after "repeatedly running into problems getting buy-in or follow-up support for major projects to beef up security around Experian's growing stable of companies handling sensitive consumer and government data."  Brian Krebs, *At Experian, Security Attrition Amid Acquisitions*, KrebsonSecurity.com (Oct. 15, 2015), http://krebsonsecurity.com/2015/10/at-experian-security-attrition-amid-acquisitions/. After purchasing other companies, "the subsequent integration of the business into our core security architecture was just a black box of magic in terms of how it was to be implemented.  And I'm not saying successful magic at all."  *Id.*  According to former employees, security efforts at Experian "ground to a halt" in recent years.  After the departure of Chief Information Officer John Finch in mid-2013, the staff at Experian's security operations center dwindled from nearly 30 employees to about a dozen.  According to one employee, while Experian leadership once viewed security as an asset:

> Once the leadership changed, the focus changed to controlling costs and not taking
> systems down for maintenance, and investments started disappearing from a lot of areas.
> We were in the middle of putting into operation certain tools to do next-generation
> detection of [cyber] threats, but we weren't able to get many of them out into production.
> And that's how Experian wound up where they are now.

4

1 | *Id.*

2 |     19.    Despite its awareness of growing efforts by hackers to access consumers' personal

3 | information in its databases, and its supposed leadership in data security, Experian failed to implement

4 | security measures that would have prevented this attack, failed to employ security protocols to detect

5 | unauthorized activity, and failed to maintain basic security measures to prevent encrypted data from

6 | becoming compromised.

7 | **Victims of the Breach**

8 |     20.    As a result of Experian's negligent security practices, Plaintiff and Class members are

9 | now subject to an imminent risk of identity theft based on Experian's exposure of their personal

10 | information.

11 |     21.    Affected consumers will have to spend time and money securing their personal

12 | information and protecting their identities.  They will need to vigilantly monitor their accounts and

13 | credit, and will also have to pay for credit monitoring or credit reports in the wake of the data breach to

14 | make sure that their credit and identity is not harmed by anyone who may have stolen their information.

15 | Individuals whose bank accounts become compromised may have to pay fees to have cards shipped

16 | faster so that they do not have to wait weeks to make purchases on their accounts.

17 |     22.    The disclosure of Social Security numbers in particular poses significant risks to Plaintiff

18 | and Class members.  Criminals frequently use Social Security numbers to create false bank accounts and

19 | file fraudulent tax returns.  According to a June 2007 report by the United States Government

20 | Accountability Office on Data Breaches, identity thieves use identifying information such as Social

21 | Security numbers to open financial accounts, receive government benefits, and incur charges and credit

22 | in that person's name.  Because victims may not be aware of the theft immediately, this type of identity

23 | theft is particularly harmful to consumers and can impact consumers' credit rating.

24 |     23.    Additionally, T-Mobile customers and applicants whose Social Security numbers have

25 | been compromised now face a real and immediate risk of identity theft and other problems associated

26 | with the disclosure of their Social Security number, and will need to monitor their credit and tax filings

27 | for an indefinite duration.  Individuals cannot obtain a new Social Security number *until* there is

28 | evidence of ongoing misuse of the Social Security number.  Even then, the Social Security

CLASS ACTION COMPLAINT

Administration warns "that a new number probably will not solve all [ ] problems . . . and will not guarantee [ ] a fresh start."  When a data breach involves Social Security numbers, identification numbers, addresses, and other personally identifiable information together, hackers can do much more with disclosed data.

24.     It appears that the personal information stolen from Experian's servers may already be for sale on the private web.  The Irish fraud prevention and security firm Trustev, which monitors online data sales listings, reported that it may have found the personal data from the Experian breach available for sale.  Trustev noted that because stolen personal information is typically sold very quickly after theft, "it's extremely likely considering the type of data and timing" that the listings were for information stolen in the Experian breach.

## PLAINTIFF'S EXPERIENCE

25.     Plaintiff Francisco Ojeda has been a T-Mobile customer since approximately January 2015.

26.     Plaintiff Ojeda first received notice of the breach online, and has not yet heard from Experian or T-Mobile about the breach.  Plaintiff Ojeda has already spent time monitoring his credit reports for fraudulent activity.  The Experian data breach has compromised his personal information, including his birthdate, Social Security number, and address.

27.     Due to Experian's conduct, Plaintiff Ojeda is now at a heightened risk for future identity theft.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the classes preliminarily defined as:

**Nationwide Class**

All T-Mobile customers and applicants in the United States who applied for services with T-Mobile from September 1, 2013 through September 16, 2015.

**California Class**

All T-Mobile customers and applicants residing in California who applied for services with T-Mobile from September 1, 2013 through September 16, 2015.

CLASS ACTION COMPLAINT

Excluded from the proposed classes is Experian; any agent, affiliate, parent, or subsidiary of Experian; any entity in which Experian has a controlling interest; any officer or director of Experian; any successor or assign of Experian; anyone employed by counsel for Plaintiff in this action; and any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

29.    Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Rule 23.

30.    <u>Numerosity</u>.  The proposed classes consist of approximately 15 million T-Mobile customers and applicants who had their data stolen in the Experian data breach, making joinder of each individual member impracticable.

31.    <u>Commonality</u>.  Common questions of law and fact exist for each of the proposed class's claims and predominate over questions affecting only individual class members.

For the Nationwide Class, common questions include:

a.    Whether Experian had a legal duty to use reasonable security measures to protect the personal information of T-Mobile customers and applicants;

b.    Whether Experian breached its legal duty by failing to protect the personal information of T-Mobile customers and applicants;

c.    Whether Experian acted reasonably in securing the personal information of T-Mobile customers and applicants;

d.    Whether any breach of Experian's legal duties caused Plaintiff and the class members to suffer damages; and

e.    Whether Plaintiff and class members are entitled to damages, restitution, and injunctive relief.

For the California Class, common questions include:

a.    Whether Experian violated California Civil Code § 1798.81.5 by failing to implement reasonable security procedures and practices;

b.    Whether Experian violated California Civil Code § 1798.82 by failing to promptly notify class members that their personal information had been compromised;

c.     Whether class members may obtain injunctive relief against Experian under Civil Code § 1798.84 or under California's Unfair Competition Law; and

d.     What security procedures and data breach notification procedure should Experian be required to implement as part of any injunctive relief ordered by the Court.

32.     Typicality.  Plaintiff's claims are typical of the claims of the proposed classes because, among other things, Plaintiff and class members sustained similar injuries as a result of Experian's uniform wrongful conduct and their legal claims all arise from the same core practice.

33.     Adequacy.  Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests do not conflict with Class members' interests and he has retained counsel experienced in complex class action litigation and data privacy to vigorously prosecute this action on behalf of the Classes.

34.     In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Experian's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

35.     In addition, class certification is appropriate under Rule 23(b)(1) or (b)(2) because:

a.     the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Experian;

b.     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be

dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.  Experian has acted or refused to act on grounds that apply generally to the proposed classes, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed classes as a whole.

## FIRST CAUSE OF ACTION

### For Violation of the California Customer Records Act,

### California Civil Code § 1798.80, *et seq.*

36.  Plaintiff incorporates the above allegations by reference.

37.  Plaintiff brings this cause of action on behalf of the California Class.

38.   "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

39.  Experian is a "business" within the meaning of Civil Code § 1798.80(a).

40.  Plaintiff and members of the Class are "individual[s]" within the meaning of the Civil Code § 1798.80(d).  Pursuant to Civil Code §§ 1798.80(e) and 1798.81.5(d)(1)(C), "personal information" includes an individual's name, social security number, or driver's license or state identification card number.  "Personal information" under Civil Code § 1798.80(e) also includes address, telephone number, passport number, education, employment, employment history, or health insurance information.

41.  The breach of the personal data of millions of T-Mobile customers and applicants constituted a "breach of the security system" of Experian pursuant to Civil Code § 1798.82(g).

42.  By failing to implement reasonable measures to protect the personal data of T-Mobile customers and applicants, Experian violated Civil Code § 1798.81.5.

43.  By violating Civil Code §§ 1798.81.5 and 1798.82, Experian "may be enjoined" under Civil Code § 1798.84(e).

CLASS ACTION COMPLAINT

44.     Accordingly, Plaintiff requests that the Court enter an injunction requiring Experian to implement and maintain reasonable security procedures to protect customers' data in compliance with the California Customer Records Act, including, but not limited to: (1) ordering that Experian, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on its systems on a periodic basis; (2) ordering that Experian engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Experian audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Experian purge, delete, and destroy in a reasonably secure manner the personal data of T-Mobile customers and applicants not necessary for its business operations; (5) ordering that Experian, consistent with industry standard practices, conduct regular database scanning and securing checks; (6) ordering that Experian, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (7) ordering Experian to meaningfully educate T-Mobile customers and applicants about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves.

45.     As a result of Experian's violation of Civil Code §§ 1798.81.5, and 1798.82, Plaintiff and members of the Class have spent time and money checking their credit reports to monitor fraudulent activity.  Class members will also incur economic damages relating to expenses for bank fees associated with the breach, any unauthorized charges made on financial accounts, lack of access to funds while banks issue new cards, the costs of credit monitoring and purchasing credit reports, the costs of applying and removing credit freezes, and many other forms of time and money spent remedying the damage caused by the breach.

46.     Plaintiff, individually and on behalf of the members of the Class, seeks all remedies available under Civil Code § 1798.84, including, but not limited to: (a) damages suffered by members of the Class; and (b) equitable relief.

47.     Plaintiff, individually and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under applicable law.

## SECOND CAUSE OF ACTION

### For Unlawful and Unfair Business Practices Under

### California Business and Professions Code § 17200, *et seq.*

48.     Plaintiff incorporates the above allegations by reference.

49.     Plaintiff brings this cause of action on behalf of the California Class.

50.     Experian's acts and practices, as alleged in this complaint, constitute unlawful and unfair business practices, in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

51.     Experian's acts and practices, as alleged in this complaint, constitute unlawful practices in that they violate California Civil Code § 1798.80, *et seq*.

52.     Experian's practices were unlawful and in violation of California Civil Code § 1798.81.5(b) because it failed to take reasonable security measures in protecting the personal data of T-Mobile customers and applicants.

53.     Experian's acts, omissions, and conduct constitute a violation of the unlawful prong of the UCL because it failed to comport with a reasonable standard of care and California public policy as reflected in statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, *et seq*., and the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, which seek to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

54.     By failing to take reasonable security measures to protect the personal data of T-Mobile customers and applicants, Experian engaged in unfair business practices and conduct that undermines or violates the stated policies underlying the California Customer Records Act.  Experian's failure to take reasonable security measures to protect the personal data of T-Mobile customers and applicants violates the stated policy of the Legislature in that businesses are to protect the personal information of California residents.

CLASS ACTION COMPLAINT

55.    In unduly delaying informing customers of the data breach, Experian engaged in unfair business practices by engaging in conduct that undermines or violates the stated policies underlying the California Customer Records Act and other privacy statutes.  In enacting the California Customer Records Act, the Legislature stated that: "[i]dentity theft is costly to the marketplace and to consumers" and "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative."  2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST).  Experian's conduct also undermines California public policy as reflected in other statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, *et seq*., which seeks to protect individuals' data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

56.    As a direct and proximate result of Experian's unlawful and unfair business practices as alleged herein, Plaintiff and members of the Class have suffered injury in fact.  Plaintiff and the Class have been injured in that their personal information has been compromised and they are at risk for future identity theft and fraudulent activity on their personal accounts.

57.    As a result of Experian's violations, Plaintiff and members of the Class are entitled to injunctive relief,  including, but not limited to: (1) ordering that Experian, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on its systems on a periodic basis; (2) ordering that Experian engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Experian audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Experian purge, delete, and destroy in a reasonably secure manner the personal data of T-Mobile customers and applicants not necessary for its business operations; (5) ordering that Experian, consistent with industry standard practices, conduct regular database scanning and securing checks; (6) ordering that Experian, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (7) ordering Experian to meaningfully educate T-Mobile

1    customers and applicants about the threats they face as a result of the loss of their personal information

2    to third parties, as well as the steps they must take to protect themselves.

3        58.    Because of Experian's unfair and unlawful business practices, Plaintiff and the Class are

4    entitled to relief, including restitution to Plaintiff and Class members of any costs incurred associated

5    with the data breach and disgorgement of all profits accruing to Experian because of its unlawful and

6    unfair business practices; reasonable attorneys' fees and costs; declaratory relief; and a permanent

7    injunction enjoining Experian from its unlawful and unfair practices.

8                        **THIRD CAUSE OF ACTION**

9                              **Negligence**

10       59.    Plaintiff incorporates the above allegations by reference.

11       60.    Plaintiff brings this cause of action on behalf of the Nationwide Class.

12       61.    In collecting and managing the personal information of T-Mobile customers and

13   applicants, Experian owed Plaintiff and members of the Class a duty to exercise reasonable care in

14   safeguarding and protecting that information.  This duty included, among other things, maintaining and

15   testing its security systems and taking other reasonable security measures to protect and adequately

16   secure the personal data of Plaintiff and the Class members from unauthorized access.  Experian's

17   security system and procedures for handling the personal information of T-Mobile customers and

18   applicants were intended to affect Plaintiff and the Class.  Experian was aware that by taking such

19   sensitive information of T-Mobile customers and applicants, it had a responsibility to take reasonable

20   security measures to protect the data from being stolen.

21       62.    The duty Experian owed to Plaintiff and members of the Class to protect their personal

22   information is also underscored by the California Customer Records Act, which was created specifically

23   to protect California residents who provide personal information to businesses.

24       63.    There is a very close connection between Experian's failure to take reasonable security

25   standards to protect the data of T-Mobile customers and applicants and the injury to Plaintiff and the

26   Class.  When individuals have their personal information stolen, they are at risk for identity theft, and

27   need to buy credit monitoring services and purchase credit reports to protect themselves from identity

28   theft.

CLASS ACTION COMPLAINT

64.     Experian is morally to blame for not protecting the data of T-Mobile customers and applicants by failing to take reasonable security measures.  If Experian had taken reasonable security measures, data thieves would not have been able to take the personal information of millions of T-Mobile customers and applicants.

65.     It was foreseeable that if Experian did not take reasonable security measures, the data of Plaintiff and members of the Class would be stolen.  Credit bureaus like Experian face a higher threat of security breaches than typical companies due in part to the large amounts of data they possess and Experian had been the subject of similar security breaches in the past.  Experian should have known to take precaution to secure the personal data of T-Mobile customers and applicants, especially in light of the data breaches it experienced within the last four years and the recent data breaches affecting numerous other companies and itself.

66.     Experian breached its duty to exercise reasonable care in protecting the personal information of Plaintiff and the Class by failing to implement and maintain adequate security measures to safeguard the personal information of T-Mobile customers and applicants, failing to monitor its systems to identify suspicious activity, and allowing unauthorized access to the personal information of Plaintiff and the Class.

67.     But for Experian's failure to implement and maintain adequate security measures to protect the personal data of T-Mobile customers and applicants and failure to monitor its systems to identify suspicious activity, the personal information of Plaintiff and members of the Class would not be stolen, and they would not be at a heightened risk of identity theft in the future.

68.     Experian's negligence was a substantial factor in causing harm to Plaintiff and members of the Class.

69.     As a direct and proximate result of Experian's failure to exercise reasonable care and use commercially reasonable security measures, the personal data of T-Mobile customers and applicants was accessed by unauthorized individuals who could use the information to commit identity fraud or financial fraud.  Plaintiff and the Class face a heightened risk of identity theft in the future.

70.     Plaintiff and members of the Class have also suffered economic damages.

71.     Neither Plaintiff nor other members of the Class contributed to the security breach, nor did they contribute to Experian's employment of insufficient security measures to safeguard the personal information of T-Mobile customers and applicants.

72.     Plaintiff and the Class seek compensatory damages and punitive damages with interest, the costs of suit and attorneys' fees, and other and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Willful Violation of the Fair Credit Reporting Act Under

### 15 U.S.C. § 1681, *et seq.*

73.     Plaintiff incorporates the above allegations by reference.

74.     Plaintiff brings this cause of action on behalf of the Nationwide Class.

75.     Congress enacted the Fair Credit Reporting Act "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  Congress recognized that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on customers."  15 U.S.C. § 1681(a)(3).

76.     Plaintiff and Class members are "consumer[s]" within the meaning of 15 U.S.C. § 1681a(c).

77.     Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because Experian "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and . . . uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports" for monetary fees.

78.     The information disclosed in the Experian data breach—names, addresses, birthdates, Social Security numbers, and other information—qualifies as a "consumer report" under the Fair Credit Reporting Act because it is:

[A]ny written, oral, or other communication of any information by a consumer reporting
agency bearing on a consumer's credit worthiness, credit standing, credit capacity,
character, general reputation, personal characteristics, or mode of living which is used or

1  expected to be used or collected in whole or in part for the purpose of serving as a factor

2  in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily

3  for personal, family, or household purposes; (B) employment purposes; or (C) any other

4  purpose authorized under section 1681b of this title.

5  15 U.S.C. § 1681a(d)(1).

6       79.     The Fair Credit Reporting Act requires consumer reporting agencies like Experian to

7  "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes

8  listed under section 1681b of this title." 15 U.S.C. § 1681e(a). Section 1681b does not permit

9  disclosure to unauthorized individuals.

10       80.     Experian willfully and recklessly failed to maintain reasonable procedures necessary to

11  comply with the Fair Credit Reporting Act, as demonstrated by Experian's prior history of data and

12  security breaches. This willful and reckless conduct injured Plaintiff and Class Members.

13       81.     Plaintiff and members of the Class are entitled to "actual damages sustained by the

14  consumer as a result of the failure or damages of not less than $100 and not more than $1,000." Plaintiff

15  and Class Members are also entitled to punitive damages, costs of this action, and reasonable attorneys'

16  fees, as set forth in 15 U.S.C. § 1681n(a)(2), (3).

17  **FIFTH CAUSE OF ACTION**

18  **Negligent Violation of the Fair Credit Reporting Act Under**

19  **15 U.S.C. § 1681, *et seq.***

20       82.     Plaintiff incorporates the above allegations by reference.

21       83.     Plaintiff brings this cause of action on behalf of the Nationwide Class.

22       84.     Congress enacted the Fair Credit Reporting Act "to insure that consumer reporting

23  agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's

24  right to privacy." 15 U.S.C. § 1681(a)(4). Congress recognized that "[c]onsumer reporting agencies

25  have assumed a vital role in assembling and evaluating consumer credit and other information on

26  customers." 15 U.S.C. § 1681(a)(3).

27       85.     Plaintiff and Class members are "consumer[s]" within the meaning of 15 U.S.C. §

28  1681a(c).

86.     Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) because Experian "regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and . . . uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports" for monetary fees.

87.     The information disclosed in the Experian data breach—names, addresses, birthdates, Social Security numbers, and other information—qualifies as a "consumer report" under the Fair Credit Reporting Act because it qualifies as:

> [A]ny written, oral, or other communication of any information by a consumer reporting
>
> agency bearing on a consumer's credit worthiness, credit standing, credit capacity,
>
> character, general reputation, personal characteristics, or mode of living which is used or
>
> expected to be used or collected in whole or in part for the purpose of serving as a factor
>
> in establishing the consumer's eligibility for-- (A) credit or insurance to be used primarily
>
> for personal, family, or household purposes; (B) employment purposes; or (C) any other
>
> purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

88.     The Fair Credit Reporting Act requires consumer reporting agencies like Experian to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  15 U.S.C. § 1681e(a).  Section 1681b does not permit disclosure to unauthorized individuals.

89.     Experian was negligent in failing to maintain reasonable procedures necessary to comply with the Fair Credit Reporting Act.  This conduct injured Plaintiff and Class Members.

90.     Plaintiff and members of the Class are entitled to "actual damages sustained by the consumer."  Plaintiff and Class Members are also entitled to costs of the action, and reasonable attorneys' fees, as set forth in 15 U.S.C. § 1681o(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, requests that the Court:

1    a.    Certify this case as a class action on behalf of the classes defined above and appoint their

2          Plaintiff's counsel as class counsel;

3    b.    Award injunctive and other equitable relief as is necessary to protect the interests of

4          Plaintiff and other class members;

5    c.    Award damages to Plaintiff and class members in an amount to be determined at trial;

6    d.    Award Plaintiff and class members their reasonable litigation expenses and attorneys'

7          fees;

8    e.    Award Plaintiff and class members pre- and post-judgment interest, to the extent

9          allowable; and

10   f.    Award such other and further relief as equity and justice may require.

11                            **<u>DEMAND FOR JURY TRIAL</u>**

12   Plaintiffs demand a trial by jury for all issues so triable.

13

14   Dated:   October 9, 2015          Respectfully Submitted,

15                                     **GIRARD GIBBS LLP**

16                                     By:   ___/s/ Eric H. Gibbs_____

17

18                                     Daniel C. Girard
                                       Eric H. Gibbs
19                                     David M. Berger
                                       Linh G. Vuong
20                                     601 California Street, 14th Floor
                                       San Francisco, California 94108
21                                     Telephone: (415) 981-4800
                                       Facsimile: (415) 981-4846
22                                     dcg@girardgibbs.com
23                                     ehg@girardgibbs.com
                                       dmb@girardgibbs.com
24                                     lgv@girardgibbs.com

25
                                       *Attorneys for Plaintiff*
26

27

28

---

18

CLASS ACTION COMPLAINT